on behalf of appellant Dr. Mark Ridley-Thomas. I would like to reserve 5 minutes of my time for rebuttal and I will endeavor to watch the clock. All right. Thank you, Counsel. Your Honors, at the heart of this case is an unprecedented bribery theory that has no corollary in the pre-McNally paradigm. From indictment through post-trial motions, the appellant asserted that Ridley-Thomas exchanged a vote in favor of the telehealth amendment for what prosecutors dubbed, quote, secret funneling. And that is an agreement to have USC help move money between Ridley-Thomas' ballot committee and a non-profit headed by in order to avoid the nepotistic optics of a direct donation. But as a matter of law, the so-called funneling cannot serve as a predicate for any of Ridley-Thomas' convictions. Flynn's assistance did not personally enrich Ridley-Thomas and personal enrichment is the hallmark of traditional bribery. Rather, Flynn helped Ridley-Thomas to make his donation, which complied fully with state campaign finance laws and public disclosure requirements without appearing nepotistic. As the government explained it to the jury, Ridley-Thomas, quote, was afraid it would look bad, look nepotistic for a politician to use his committee funds to benefit his son. That's at 9 ER 1753 to 54. They claimed that because Ridley-Thomas knew there would be, quote, political optics around funneling or sending to an organization that impacted his son, he did not directly donate. He did it in a circuitous way. Counsel, was there any evidence presented at trial about the vote on the telehealth program? Yes, there was evidence presented at trial. Two supervisors testified for the defense and those supervisors testified that Ridley-Thomas exerted no pressure on them at all. But wasn't, that wasn't part of the government's theory as well? What was not, Your Honor? That the telehealth vote was part of the, what they call the scheme? Yes. The government charged in the indictment and argued throughout trial that what Ridley-Thomas exchanged for his vote on the telehealth amendment was the secret funneling. And that alleged thing of value is a legally inadequate predicate for any of Ridley-Thomas' convictions. Under the cases, what is a thing of value? How have we defined that? The cases have not defined thing of value. However... What about Renzi? What about Renzi? Renzi also did not define thing of value. Renzi... What's valuable to the defendant, right? The subjective look. Yes, Renzi considers the subjective value of the item received. But Renzi was a cash bribe case. Renzi did not deal with the avoidance of nepotism as the value... I understand that, but it did explain this broad rule with a subjective view. And it's not limited to cash. So I'm trying to figure out, it seems to me this is the toughest case for you, to be plain. Although, if you've got other case law, you want me to... I've read a lot of case law. And so I'm really interested to hear what you have to say about that. I don't think it's limited to cash. It's not limited to cash, Your Honor. However, in the pre-McNally paradigm, to which skilling limits the reach of Section 1346, personal enrichment is what's at the heart of traditional bribery. I think the government, frankly, would agree with that. They've offered no meaningful rebuttal to that point. And the first line of their brief says, Ridley Thomas exchanged private gain, abused the power of his public office for private gain. And so what's at the heart of honest services fraud is personal enrichment as we've termed it consistent with skilling's language, or private gain, as the government has termed it. But either way, the core is what you find in the pre-McNally paradigm, and that's cash commissions miscellaneous financial perks. I still don't hear you getting around RENZI, but we can circle back to it. Go ahead, Judge. Well, I wanted to follow up on RENZI as well. So RENZI involved cash, but it wasn't technically a cash benefit. It was cash already owed. So how should we distinguish that aspect of RENZI from this case, given that it wasn't actual enrichment? RENZI is one of many loan cases, and the loan is categorically different than the alleged benefit at issue here. So a loan offers immediate use of someone else's cash at a time when you need it most. And the court in RENZI was clear that there were two elements to the thing of value that they were evaluating there. The first was the objective value of that quid. It was cash. It had objective value. And it also had subjective value to Mr. RENZI, because his argument essentially was this cash did not enrich me sufficiently because it was owed to me. Okay. But for purposes of the, we've got a couple different statutes here, but purposes of the incorporation of Section 201 into the honest services, is it enough, or do you believe the government established that Mr. Ridley Thomas's son was the recipient and the beneficiary or his organization of the $100,000? The $100,000 that PRPI received was Ridley Thomas's $100,000. I mean, that's the key that makes this case.  It's not the answer to Judge John's question. Yeah. So we've got time to talk through these other things, but I'd ask one thing at a time. This is pretty complicated. So a thing of value under the agreement was that Mr. Ridley seeking? Does that not, is that not contemplated by Section 201's incorporation in honest services? It doesn't have to go back to Mr. Ridley Thomas, in other words, correct? Let me break down Your Honor's question. So I agree, Section 201, the concept of thing of value is incorporated from Section 201. I think Your Honor's characterization of the thing of value is a bit different from the government's here. What the government argued is that the funneling, which was the movement of Ridley Thomas's own money from point A to point B, was the thing of value. Flynn's agreement to do so. The district court called it an agreement. That was the thing of value. The agreement itself, the government has characterized it variously as an agreement or as a service. So it's not the money itself, it is the service that is the thing of value. Okay. I suspect Judge Kristen now has a question. Well, it's just the flip side of this. I think that the picture presented, and truly this is so you can respond, it seemed that the government's theory in the picture presented is that the reason the money was transferred or funneled is your word, and to avoid optics, is that the defendant was trying to provide a, I think he said a safe landing, a landing for his son. And so going back to Renzi, we're looking at was this subjectively valuable to the defendant. And I know that you've repeatedly said that you think that there's this optics, avoiding optics or negative publicity was, of course, the government has disavowed that. And I think to Judge Johnstone's point, the question is whether that is a part of the scheme that we're talking about here. Isn't it part of the subjective value? Well, two answers to that, Your Honor. Though the government has tried to distance themselves from their own theory, it is charged in the indictment. I mean, I would point... I appreciate that. But could I just get you to focus on this? It's a very specific question and it's not intended to be a trick question. It's not just that the money was being funneled to use your word, but it was being moved to a place where it could benefit the defendant's son. And I think that's what Judge Johnstone was speaking to. Right, Your Honor. There's no question that PRPI received the money. I don't think Renzi is broad enough to cover the circumstances at issue here because Renzi is dealing specifically with the cash bribe. And the court is careful to analyze that in two ways. One, the cash has objective value because it is cash, and subjective value because it is someone else's money when the defendant needed it most, an early repayment of a large outstanding personal debt. And that is categorically different than the circumstance we have at issue here. Why is the PRPI not cash, just because it wasn't cash that went to his son personally but went to the organization for the son's benefit? That is not our argument. The government erected as a straw man argument the notion that we were arguing that because the money ultimately landed with PRPI that it could not be a benefit to Ridley Thomas. But you said that there wasn't cash, and I'm just trying to, how is there not cash here? That is the cash at issue, is it not? Well, no, Your Honor. The money was Ridley Thomas's own money. And the reason the government termed funneling is because otherwise they would have been placed in the unfortunate position of arguing that Ridley Thomas bribed himself with his own money. In order to avoid that, they had to coin a term to describe this transaction. Counsel, didn't the jury instructions reference the $100,000 as one of the value thing about the value? Yes, Your Honor. So the $100,000 was provided to the jury as an option for a thing of value, correct? Well not exactly, Your Honor. I think the government tells only part of the story of that jury instruction. Well, the jury instructions speak for themselves, correct? Yes, the beginning of that instruction says the thing of value does not have to be tangible. And the reason it says the thing of value does not have to be tangible is the jury asked, does the thing of value have to be tangible? Or can it be an action or information? That's at ECF 287. The government has not included that in their excerpts of record. The jury was grappling with the government's funneling theory. The jurors wanted to know, could funneling, could this agreement, this service, be a thing of value? And the government then agrees to the district court's response, which starts with the funneling does not have to be, I'm sorry, which starts with the thing of value does not have to be tangible. If the government is proceeding on a cash bribe theory, if their theory is what they've tried to make it out to be on appeal, which is this is a cash bribe, then that response and their agreement to that response is nonsensical. So is the use of the term funneling. If proceeding on a cash bribe theory, the government did not need a catchphrase to describe it. Instead, they had a scenario where there was no cash bribe. Ridley Thomas did not take cash from USC. Ms. Bell, if we, hypothetically, if Renzi did control some or part of the honest services count, Renzi I think was an honest services case. Yes, your honor. Can you give us a reason why it would not also control the government contract count? Our contention is that the funneling is not a thing of value and that that would apply across the board. And if conversely, if it is, it would apply across the board? There would be no distinction what would keep us from extending the logic of Renzi to in the same similar text to 666? We've made a statutory construction argument there, your honor, that the thing of value can be no broader in 666 than traditional notions of property. And that Ridley Thomas's hiding of the use of his own money to benefit a non-profit is akin to the accurate information theory that the Supreme Court has recently found is not a valid thing of value. It's not a traditional notion of property. I would note that the government has not responded to that argument at all. In which case is that that you're referring to? The accurate information theory?    Counsel, what's our standard of review here? This is a sufficiency of the evidence claim, your honor, because the conduct, what the court must decide is whether the conduct of conviction fits within the statutory boundary of the crime. And here it does not. This was not a cash bribe theory. No one told the jury that. What the government told the jury over and over again, what's charged in the indictment is the funneling. That's where they coined this term. It's over at Acts 47 to 78 that describe the movement of Ridley Thomas's own money from his ballot committee to this non-profit. And USC comes in in order to avoid the appearance of nepotism. That is USC's value add. The undisputed evidence showed that it was perfectly legable, perfectly permissible for Ridley Thomas to donate the funds directly from his ballot committee to United Way. Was there, I guess, evidence or argument on USC's authority over the $100,000 once it was in possession of it? In other words, did USC not have legal title to do whatever it wanted with the $100,000 once the first transfer was made? Yes, your honor. There was both evidence and argument. The evidence showed that Ridley Thomas used the word discretion in his donation letter so that those funds... Excuse me. Was the donation letter admitted? The donation letter? I believe it was, your honor, but I would have to double check and I can provide your honor with a record. I just want to make sure you're speaking of evidence that was admitted. So there's also this SER 502 and that's the letter acknowledging receipt. Is that the evidence you're speaking to right now? The evidence of Flynn acknowledging receipt is a separate letter. I have them both. My question, again, I didn't mean to interrupt. My question is just whether both of those letters are what you're talking about right now in response to Judge Johnstone's question. The letter that I'm referring to right now is what the government characterized as the sham letter. So that's where Ridley Thomas, it's his letter. I've got that right here and that was admitted?  Okay. And then is it also correct, am I also correct to understand the SER 502 was admitted? That's the letter from Flynn acknowledging receipt of the money? Yes, your honor. Forgive me for interrupting. And just because we're short on time and I want to make sure you have time for rebuttal, under the terms of this, USC had full authority to decide whether or not then to reconvey or to convey another $100,000 to the organization. Is that right? No, I don't think that's right, your honor. Okay. Is that a matter of law, fact? How are we supposed to tell that? Fact, your honor. So the funds were deposited into the dean's discretionary account so that Dean Flynn would have discretion over those funds. And the government's theory very much was that Ridley Thomas had discretion over those funds, not Flynn. I can point the court to one- Your position at that point, as a matter of law, what's your position as to who had discretion over those funds once they were transferred to USC? As a matter of law, who had- As a matter of fact, in your view, who had discretion over those funds, USC or the defendant? Flynn and Ridley Thomas agreed that she would help move his funds to PRPI to avoid his appearing nepotistic. We don't dispute that. That is the government's theory, and on a sufficiency challenge the inferences are drawn in their favor. The problem comes in that that funneling, the movement of his own money, is not a legally cognizable thing of value. In your view, was USC obligated to move those funds, or could it have decided to do something else with those funds if it were discretionary? The government's theory was that- What's your view of the evidence? My view of the evidence is that the two reached an agreement, that that is what would happen, and that is what happened. My question was, at the point that the money was transferred to USC, could USC, because it was a discretionary gift, could USC have chosen to do something else with the money? I imagine Marilyn Flynn could have changed her mind, yes. I think it's critical for the court, however, to understand that that is not what the government told the jury, and that that is not the basis for the conviction. Well, I guess we're trying to distinguish here, at least as I understand it, between what the terms of the agreement at issue are, the crime, and what the underlying obligations would have been in the absence of the agreement, which would be, for example, whether USC had full use and enjoyment of those funds, and so that, in fact, it was a transfer of USC's funds to the organization. In a hypothetical alternative scenario where there was no agreement, then it would have been a donation that USC could use as its discretion, but there also would be no bribe. There would be no alleged bribe in this case if there were no agreement, because the agreement is the bribe. I do want to point the court to 1 ER 196. I have many record sites for this, but for example, the government said it would be really bad for Marilyn Flynn if he had donated $100,000 and she couldn't get it out of the university. That's the whole point, funneling the money. There are pages and pages and pages of similar arguments where the government's theory is Marilyn Flynn has no discretion over these funds. She's working at Ridley Thomas' direction, and she is funneling the money for him in order to make sure that it arrives at its destination, and this agreement, the funneling, is the thing of value. But you agree with that, that there was an agreement between them regarding how the money was going to be dispersed. I absolutely agree that there was an agreement. My contention here is that the agreement is the thing of value, not the cash. This is not a cash bribe of USC's funds. That's a complete about-face from what the government argued below. Did the jury hear evidence, I think this is right, that Mr. Ridley Thomas did send a $100,000 check directly and then it was returned, right? So he sent one directly to United Way and then it was returned, and that was all before contacting Ms. Flynn. Is that right? He sent a $100,000 donation to community partners, so to a different entity. Well, actually, that's a United Way entity, but I think you've answered my question. That's the one that was returned when he sent it directly. Yes, Your Honor. And the reason it was returned, Sherry Dunbarry is the key witness who testified to this. The reason it was returned was because of political optics. That organization was not within their mission statement to fund passion projects, essentially, and they didn't like the political optics of Ridley Thomas's ballot committee funds being used to fund a non-profit under their auspices. That would look nepotistic. That was their concern. And the avoidance of nepotism is the only benefit of Flynn's assistance in this case. There was no legal impediment, no practical or other impediment to his making a direct donation. I think you've made this point. Yes, I understand it. Okay, very well, Your Honor. Thank you, Kelsey. You've exceeded your time, but we'll give you a couple of minutes for your testimony. I appreciate it, Your Honor. Thank you. Good morning, Counsel. Good morning. May it please the Court? Lindsey Greer Dotson on behalf of the United States. This argument raised for the first time on appeal that perceived reputational benefit was the quid fails for four reasons. The first is one the Court has discussed, which is there was a jury instruction here. Jury instruction, counsel omits from their opening brief, their excerpts of record, and devotes but one sentence to in their reply, that the fourth quid was a, quote, $100,000 payment from USC to the Sun's non-profit. The defense cannot dispute and does not dispute that a payment is an item of value. Renzi controls in this case. Well, but that's, it's complicated in this case. It's not that he picked up the phone or alleged to have picked up the phone and said, I want you to spend $100,000 of university money. So, so is opposing counsel correct that the government characterized this as funneling? A funneling of payment? Absolutely. Right. That's my read of the record as well. Yes. So what about that? Her, her entire argument really rests on this point, that that doesn't satisfy Renzi. It's not a thing of value because the, because Mr. Ridley Thomas spent $100,000 of his campaign funds. Right. So the first argument is that the jury instruction says the payment. Secondly, every reference to... Can you slow down? Sure. The first point is that the jury, we've got the jury instructions. Right. How does that help me, please? So that's the payment. And every time the government referenced funneling, that is inherently a reference to securing that $100,000 check. That's the whole point of funneling the money is to get USC to issue a check. We understand that, counsel, but I, I heard, when you came to the podium, I heard, I heard you say this is that they're arguing for the first time on appeal. Yes. They're arguing for the first time on appeal that there's legal inadequacy with respect to the fourth quid, which is the jury instructions told the jury was a payment. All right. And you've got four reasons why that's wrong. And the first one is that a jury instruction... So the first one, there's a jury instruction that says the fourth quid was a payment. Which one is that? That's at SCR2. Okay. Second, yes, the government referred to funneling in argument. That's what's also said in the indictment as along with the payment. And that's because every time there's a reference to funneling, that is inherently a reference to that payment, to getting that check. That's the whole point of trying... We appreciate that. Okay. Third, even if you could divorce the service of funneling from that ultimate check, that $100,000 payment, services are items of value. That Schwartz... So this is what I need to understand. What is the government's position on this? Because you did argue funneling. The transcript shows us that, and we appreciate that it was his money and your, and your theory is that... But you have expressly disavowed the optics theory. You said that's not the thing of value. The thing of value... Correct. Go ahead. The thing of value has never been nepotism or optics. That's why he engaged in what he did. Well, I think there's sound bites in the record that make that a little bit muddy. Please tell me what's the thing of value. The thing of value is the $100,000 payment as instructed in the jury instructions. The government, when it referenced funneling in its arguments, inherently is referencing that attempt to get USC to issue a check. And the reason that that was important to the defendant and it had value was because the defendant could not get his money to benefit his son otherwise. Right. And so this is the... But I read your briefs to be backing off pretty overtly. We're not arguing, as I understand your briefs, the government's not arguing that the thing of value was avoiding the publicity, the optics. Am I correct on that? Certainly. That's his motive throughout. Okay. So now you're saying when you referred to funneling, that is the thing of value is the service of transferring the money. Is that it? There are two things. When we talk about funneling, yes, there is the service, the help, but it's ultimately to secure the $100,000 payment. Well, he had $100,000. That's what's different about this case. Mr. Ridley Thomas started with $100,000, and he had tried to send it to the United Way agency, and it came back for the reasons that that agency wasn't willing to do this. And so now he's, according to the indictment and the evidence of trial, trying again, right? And he's enlisting help from the dean instead. And so your theory is that that is a thing of value because? Because it is a payment, and Renzi says payments are items of value. And I do want to be clear about something. So could I go back to that for just a minute? When you say because it's a payment, and Renzi was a payment, I think this harkens back to Judge Johnstone's question. The payment in Renzi was, of course, a loan that was already due. So in that way, I think, you know, we're not just talking about, as I said, calling the dean to say send $100,000 over. But in Renzi, there was also not really – they weren't really starting from a blank slate either. That debt in Renzi was owed and it was paid early, and it wouldn't otherwise have come to the defendant at that time. But I don't know. I can't tell if you're relying on that. Well, Renzi's important in multiple ways. Here's why. Renzi says any payment that has subjective value to the defendant is a thing of value. We read that broadly. Two, arguably, that money was already owed to the public official. It doesn't matter whether it's his money or not. The fact is that there is a payment, and a payment is a thing of value. And the loan cases in particular that the government cites make clear that the immediate use of money, whether it's owed to somebody or not, that is a thing of value. A payment that allows immediate use of the cash, and defense counsel concedes that, and that's the point here. Because the defendant needed to get money for his son, to the nonprofit, to hire the employee, to provide a salary to his son, and the nonprofit wasn't going to accept it. So again, is the thing of value the service of getting the money from point A to point B? The thing of value is the $100,000 payment as instructed, and even if the service were also part of... The value added. He started with $100,000. So what's the value add? The value added is employment for his son. He can't get the money to his son otherwise. The nonprofit's going to reject it. The value is getting money to his son. The value is getting money to the nonprofit so it can get off the ground. Then it sounds like the service, and this was a lawful transaction according to the testimony, setting aside, in other words, moving the ballot committee funds to his son. It wasn't illegally nepotistic. So how are we supposed to know what value, if it doesn't rely simply on the payment? I understand that's your first argument, but if we look to the value, Renzi, for example, there's at least the time value of money. There's a financial value here. Is there any proof here that the service that you're alleging had financial value to do something that was perfectly legal? Absolutely. So the value is first getting the check, getting the $100,000. In addition, the jury was perfectly reasonable to conclude that it had value in the sense that it got employment for his son, that it got... So that's the subjective value. But we've said in some of the cases there has to be both financial and subjective value. If the financial value, right, so your friend argues that this was a boomerang transaction. He was bribing himself. The money was to the benefit of himself or his family. So if the $100,000 is off the table, do you have any basis to succeed then if we're simply looking at the value of the funneling services? Absolutely. Schwartz is a case on point there that assistance in securing a merger, that assistance is a thing of value. In addition, there have been a number of cases before this... The merger is a financial transaction as well, right? Then we're back to the fact that the pie is not getting any bigger in this case, right? Unlike other financial transactions, even the early repayment of the loan has financial value. If we accept your friend's argument that he's as well off at the end of the transaction as he was at the beginning, then we just have that service, right? He's not as well off because he can't get the money because the non-profit is going to reject it. And that's the whole point. This money is going to his son and it cannot get there otherwise. Can I ask a related question? There's indication in the record that there was, in some of the communications, that there was a need to get the money to the non-profit quickly. Did the jury hear evidence of that? Absolutely. It's in emails and testimony. What it happened was the non-profit wanted to hire an employee and it already extended this offer of employment. The money had to get to the non-profit for that employment to go through by May 15th. For Sebastian's employment or for the assistant? For the assistant, a woman named Zanetta Smith who testified. So that money had... And the jury had those communications? Yes. Do you have the ER sites? It's the Act with Dispatch email. I've got that. That's just one of them. There was other testimony as well. I didn't mean to cut you off. Are there other... Yes. It's the series of emails where he's saying that he needs to get the money there by a certain time and we can pull those sites for the court. But the Act with Dispatch makes it perfectly clear that it has to happen by May 15th in order to onboard this employee. I have that. And those were admitted. And that goes back to why the loan... Sorry, that was a question. That was admitted? That was admitted, yes. Thank you. And that goes back to why the loan cases matter and something Defense Counsel just said now, which is the immediate use of cash is a thing of value. And that's what happens with loan cases. There is an immediate use and ability to use that cash, even if it's ultimately owed to somebody. When you say loan cases, is there case law other than Renzi that you want to call our attention to? Absolutely, Your Honor. Let me pull those up. So that's Gorman, Crozier, and Kemp. And at page 14 of his reply brief, the defendant concedes that any payment like a loan that affords a person immediate use of the cash provided can be a thing of value. And that's the point. The defendant could not have gotten that money there otherwise without Maryland Flint Services. And I would like to respond to some of the points that Your Honor's raised with my counsel here. First of all, it was USC's money, factually and legally. Not that it matters. Any payment under Renzi has value, but Burton makes clear that as a matter of law, it was USC's money. And yes, they had an agreement, and counsel agrees that they had an agreement, in fact, between Mark Ridley Thomas and Maryland Flint, but that doesn't mean that USC's going to issue the payment. Maryland Flint has to lie and essentially defraud USC. She's pretending the money's for a survey, that PRPI, the nonprofit, is a vendor providing services to the university, and she lies to numerous employees, including the Disbursement Control Office, to get that check issued. And one critical fact here... And I think to do it quickly, but did the jury hear all of that evidence? Yes, it did. Which part of the transcript should we look at? Okay, so we should look at the testimony of Adriana Gonzalez. Okay. And the emails between Maryland Flint and Adriana Gonzalez. I interrupted you, but I needed that. Oh, no, of course you did. Go right ahead, you were saying. Right, so one of the key parts is Maryland Flint's not even sure she can get this money out of the university. What happens is she's made this agreement with the defendant, and she's trying to move heaven and earth in the span of seven days to get this money out so that it can meet this May 15th deadline that the defendant has imposed. One critical thing happens, and this is the testimony of Adriana Gonzalez, a woman who works for Maryland Flint. There are multiple levels of supervision between her, but Maryland Flint one morning goes into her office, slumps in a chair, and says, I'm going to get in a lot of trouble if this check doesn't get out. And she's urging her subordinate employee to get this money out quickly. The defendant has leaned on her. She's not sure she can move it out of the university, but she ultimately does by lying to the university, and USC does issue that check. One other point, when the whistleblower comes forward and this all comes to light, USC goes to that nonprofit, United Ways, and PRPI, and asks for its money back. It's not asking to send that money to the defendant. It's asking for its money back. Just repeatedly throughout this case, the government argued that it was money coming out of USC that's a reference to USC's money. I'd like to talk briefly about the standard of review. Plain error on this issue is the standard of review. This is an argument that not once at any time, pre-trial, during trial, or in any post-trial briefing, ever was raised. And it's a mixed question of law and fact. That's yi jin shou. And that's because this court does have to look to the indictment and the transcripts to assess what the argument was, whether this theory was ever advanced before it can even get to the legal merits of it. Millhiser, a case that the defense cites in their reply brief, is not on point because that was a preserved challenge to the legal theory. This is an unpreserved challenge that involves a mixed question of law and fact. So plain error... Is that true, in your view, as to both the honest services and government contracts count? Yes. Would you help me a little bit with a question I had asked your friend? You'd cited the loan cases. Are those all honest services cases? Or, in other words, are there cases in our court that would translate Renzi to the government contracts statute?  Right, so Crozier is a Second Circuit case, but that's Section 666. Renzi is a Ninth Circuit case on point. I believe those are either honest services fraud or bribery cases that deal with this idea of a thing of value, the loan, because it affords immediate use of the cash, can be the thing of value. So what would it take, assuming... If Renzi controls here, why should we carry Renzi over to 666? Because it's making clear that an item of value, any sort of payment, is an item of value. And it's an item of value because it affords immediate use of that cash. And it doesn't matter whether the defendant thought it was his own money passing through USC or not. It factually wasn't. But even if it had been, the funneling through USC is affording the defendant immediate use of that cash to his son to allow the nonprofit to get off the ground. The son has a mounting personal debt. It helps the son get an income and money and health benefits. There is personal enrichment. That's something that defense counsel said repeatedly in their briefing. Personal enrichment's a hallmark of corruption. We absolutely agree. This was personal enrichment from start to finish with benefits, with the admissions, scholarship, professorship, and $100,000 payment. But he wasn't convicted on any of those others. So... The government actually disputes that with respect to Count 15. Count 15 is the count where the wiring is the your-wishes-my-command. So basically what's happened is right after the November 28th assembly letter comes, there is this frenzy of activity trying to get Sebastian Ridley-Thomas out of the California State Assembly. They're trying to get him this professorship as one of the things. It's not happening. And so Mark Ridley-Thomas reaches out to Marilyn Flynn, the dean. He calls the head of DMH. He then talks with Marilyn Flynn. He then sends an email that says, John Sharon, he's ready to go. Within 30 minutes, Marilyn Flynn is then reaching out to her staff, copying Sebastian Ridley-Thomas, and saying, we've got to move forward. Highest urgency here for this scholarship. Let's tap our endowed funds. Move every mountain to get this scholarship. A few days later, he then... There's an email from his deputy about this master contract with DMH, which is a big deal to Marilyn Flynn. She then emails the dean and says, look, we've got to get the professorship letter out this time, that offer letter out, in the interest of showing MRT that we can deliver. She then delivers in early February with the admissions, scholarship, and professorship. Immediately after she delivers, he makes good on his previous agreement with her and says, your wish is my command in response to an email with the five contract amendments that she desperately needs to make telehealth viable. The $100,000 does not come into play until months and months later. At that point, there's no contemplation that Marilyn Flynn or USC would be involved in this $100,000 transaction at all. I guess I wanted to go to the immediate use of cash framing. I'm trying to recall where I saw that in the briefs. Was the jury instructed on that? Did they need to be? They don't need to be. Again, what the jury was instructed was that the fourth quid was a $100,000 payment. Right, but I think the financial value, we've talked about the subjective value,  again, I'll go back. Maybe you raised it, I just didn't note it. The immediate use of cash, which would then be not just subjective, but would be financial value even if it was his own money, perhaps under the Renzi theory, where should we look for that development before the jury? But the immediate use of cash, the government argued that throughout, which was they had to meet this May 15th deadline and he wasn't going to be able to get the money to his son for the benefit of the non-profit to also hire this employee without getting a check from USC's fund. The check that's in evidence is a check from USC's bank account. That was the whole argument throughout and the jury was perfectly capable and rational of assessing the value of that. I'm not sure you finished your thought about count 15, did you? The point on count 15 is that the quids tied to that are the admissions, scholarship, and professorship. I know in the opposition to the Rule 29 briefing, one of the things the government said was well, those counts, the majority of the honest services fraud counts pertain to the $100,000 transaction in the telehealth contract. Honestly, it should have said primarily pertain because four of the five counts do primarily pertain to that. But the reality is count 15 only applies to the admissions, scholarship, and professorship on the facts. The $100,000 doesn't come into play until months and months later when the defendant is trying to get money to his son's non-profit and has now realized that he needs a way to do so and he can't do it directly. And the defense in their briefing keeps talking about that well, Marilyn Flynn's agreement on the $100,000 is a gratuity. I want to be very clear about something. The honest services fraud instructions expressly required a quid pro quo and fulsomely did so. That's at ER 68 through 76. There is no argument that those quid pro quo instructions were in any way legally insufficient nor could there be. These were the instructions the defense requested. Once the jury found a quid pro quo, this court can be assured there was no gratuity because under Sun Diamond, once you have a quid pro quo, we're not talking about a gratuity. First of all, the government never argued that theory, but even if there were an errant comment here or there that could have been perceived to be that, the jury instructions categorically foreclosed any conviction for a gratuity with its requirement of a quid pro quo. And that's what the jury found five times over with each of the honest services fraud convictions requiring quid pro quo bribery. I want to make sure I answer any of the court's questions. It appears you have. Thank you, Counsel. Thank you. I appreciate the time. Thank you very much. Let's have two minutes for rebuttal. Thank you, Your Honors. I first want to address the notion that a service can be a thing of value for either 1346 or 666. The government points to Schwartz. Schwartz is neither. Schwartz has to do with 1954, which is improper influence in the administration of employee benefit plans. Theoretically, because that does not cover core political activity, the interaction between elected officials and their constituents, that could have a broader thing of value definition than we have at issue here. But the value of the merger there was financial benefits. It was to ensure the financial health of the union's then presidents. What we have here is fundamentally different. The government has leaned very heavily into this idea that the money could not have gotten there but for Flynn's assistance. The only impediment was the appearance of nepotism. That's why community partners returned the money. There was no evidence in the record that United Ways shared that idiosyncratic concern. The evidence in the record was that Ridley Thomas was concerned about nepotistic optics, or rather that was the government's argument. He was so concerned about nepotistic optics that he enlisted Flynn's assistance to avoid the appearance of nepotism. Now, Felicity, your view that was the government's only argument? The government's, what's chart, it starts with the indictment, and I'll reference the court to 6 ER 1128-29. In order to, they funneled the money in order to ensure the success of the university's payment to United Ways and to avoid any political fallout for defendant Ridley Thomas. Yes, and they both are the avoidance of nepotism. The only impediment to the money getting from point A to point B is the testimony of Sherry Dunbarry that her organization did not like the nepotistic political optics involved. The only impediment. So why isn't that enough? He tried to send it and it didn't work. It came back. He needed to get it there quickly. I just want to, I'm trying to play devil's advocate. Why is that not enough? He needs to get it there quickly so he called somebody he had worked with. That's the government's theory. Yes, so we have the pre-McNally paradigm, personal enrichment, and we have the avoidance of nepotism for a public official. There is no relationship between those two. He was not personally enriched by the avoidance of nepotism. That was a benefit fundamentally to his reputation. So in other words, what I'm hearing you say is not that it wasn't a benefit. It was. But you don't think it's a benefit that satisfies post-skilling and satisfies the statutory scheme. Exactly, your honor. Skilling has drawn the boundaries that this court must apply. I see I'm out of time. I have plenty else I would like to respond to. But I believe the court has our arguments, especially in our supplemental brief with regard to the gratuities theory, and I thank the court for their time. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for a decision by the court.
judges: RAWLINSON, CHRISTEN, JOHNSTONE